IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAKOTA J. M.,                         )
                                      )
            Plaintiff,                )
                                      )
      v.                              )   1:22CV520
                                      )
KILOLO KIJAKAZI,                      )
Acting Commissioner of Social Security,)
                                      )
            Defendant.                )

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Dakota J. M. ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on February 24, 2020, alleging a disability onset date of February 24, 2020 in both applications. (Tr. at 15, 200-17.)[1] His applications were denied initially (Tr. at 52-69, 90-94) and upon reconsideration (Tr. at 70-89, 101-18). Thereafter, Plaintiff requested an administrative hearing de novo before an

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

Administrative Law Judge ("ALJ"). (Tr. at 120-21.) On July 13, 2021, Plaintiff, along with his attorney, attended the subsequent telephonic hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 15.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 24), and, on May 24, 2022, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets and quotation omitted).

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (internal quotation omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

2

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 18.) At step two, the ALJ further determined that Plaintiff suffered from two severe impairments:

> chronic liver disease; and obesity[.]

(Tr. at 18.) The ALJ found at step three that neither of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 18.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform light work with further limitations. Specifically, the ALJ found as follows:

> [Plaintiff] can frequently climb ramps and stairs; [he] must avoid concentrated exposure to extremes of cold and heat; and he must avoid all exposure to fumes, odors, dusts, gases, and areas of poor ventilation, etc.

(Tr. at 18.) At step four of the analysis, the ALJ determined, based on the testimony of the vocational expert, that Plaintiff's past relevant work as a cashier II did not exceed the above RFC. (Tr. at 22.) Alternatively, the ALJ concluded at step five that, given Plaintiff's age,

5

education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy. (Tr. at 23-24.) In light of her findings at steps four and five, the ALJ ultimately concluded that Plaintiff was not disabled under the Act. (Tr. at 24.)

Plaintiff now contends that substantial evidence fails to support the ALJ's RFC assessment. In particular, Plaintiff argues that the ALJ "failed to include RFC limitations that account for [Plaintiff's] fatigue, lethargy, depression, and difficulties with memory and concentration that result from his impairments of liver disease and obesity." (Pl.'s Br. [Doc. #11] at 10.) Plaintiff further argues that "the ALJ failed to explain the basis for excluding RFC limitations to account for these symptoms" or to specifically consider the impact of obesity on Plaintiff's RFC. (Pl.'s Br. at 10-11.)

With respect to these contentions, Plaintiff argues that the ALJ failed to perform a function-by-function assessment of relevant and contested limitations as required by Social Security Ruling 96-8p ("SSR 96-8p") and Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). As SSR 96-8p instructs, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including the functions listed in the regulations. Social Security Ruling 96-8p: Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996). "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016) (internal quotation omitted). Further, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific

medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 61 Fed. Reg. at 34478. An ALJ must "both identify evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal brackets, emphases, and quotation omitted).

The Fourth Circuit has noted that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636 (quoting Cichocki, 729 F.3d at 177). Meaningful review is frustrated, and remand is necessary, if the court is "unable to fathom the [] rationale in relation to evidence in the record." Cichocki, 729 F.3d at 177 (internal quotation omitted). The court in Mascio concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. Mascio, 780 F.3d at 637.

In raising these contentions, Plaintiff also challenges the ALJ's evaluation of Plaintiff's symptom allegations. Under the applicable regulations, the ALJ's decision must "contain

7

specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p: <u>Titles II and XVI: Evaluation of Symptoms in Disability Claims</u>, SSR 16-3p, 82 Fed. Reg. 49462, 49467, 2017 WL 5180304 (Oct. 25, 2017); <u>see also</u> 20 C.F.R. § 404.1529. Moreover, in <u>Arakas v. Comm'r, Soc. Sec. Admin.</u>, 983 F.3d 83 (4th Cir. 2020), the Fourth Circuit recently clarified the procedure an ALJ must follow when assessing a claimant's statements:

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.
>
> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. <u>See</u> 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. At this step, objective evidence is *not* required to find the claimant disabled. SSR 16-3p, 2016 WL 1119029, at *4–5. SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." <u>Id.</u> at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. <u>Id.</u> at *5.

<u>Arakas</u>, 983 F.3d at 95 (alteration in original). Thus, the second part of the test requires the ALJ to consider all available evidence, including Plaintiff's statements about his pain or other symptoms, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." <u>Craig</u>, 76 F.3d at 595. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain

8

or other symptoms limit his ability to perform basic work activities. Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings," id., as well as the following factors set out in 20 C.F.R. § 416.929(c)(3) and 20 C.F.R. § 404.1529(c)(3):

>   (i)   [Plaintiff's] daily activities;
>
>   (ii)  The location, duration, frequency, and intensity of [plaintiff's] pain or other symptoms;
>
>   (iii) Precipitating and aggravating factors;
>
>   (iv)  The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [his] pain or other symptoms;
>
>   (v)   Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [his] pain or other symptoms;
>
>   (vi)  Any measures [Plaintiff] use[s] or [has] used to relieve [his] pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
>   (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

In the present case, as instructed by the regulations, the ALJ considered the entire case record and explained the reasons for deviating from Plaintiff's statements regarding the impact of his symptoms on his ability to work. Whether the ALJ could have reached a different conclusion based on the evidence is irrelevant. The sole issue before the Court is whether substantial evidence supports the ALJ's decision. See Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § 205(g) precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" (footnote omitted)).

9

Here, the ALJ reviewed the medical evidence, the opinion evidence, Plaintiff's testimony, and the record, and explained the analysis of Plaintiff's subjective complaints. Notably, the ALJ recounted Plaintiff's testimony that his autoimmune hepatitis causes lethargy, and "that he may be awake for an hour or 2 before he takes a nap." (Tr. at 19.) The ALJ further recounted Plaintiff's testimony regarding his body aches and weight gain making it difficult to stand and walk. The ALJ noted that Plaintiff testified "[h]e also will not go to the store because he is too tired" and "that he could not hold his weight well and he was always uncomfortable." (Tr. at 19.) The ALJ noted that Plaintiff testified he was "depressed because he cannot stop medication side effects" and that "he cannot do laundry but he can cook" and "does not do yardwork or housework" but "has a driver's license and can drive." (Tr. at 19.) The ALJ also noted that Plaintiff testified that "when [he] gets fatigued he will sleep," and "memory and concentration became problematic in the middle of 2020" and, for example, he "might forget a full conversation a week after the fact." (Tr. at 19.)

In accordance with the regulations, the ALJ determined that Plaintiff's impairments could reasonably be expected to produce his alleged symptoms. (Tr. at 19); see also 20 C.F.R. § 404.1529(b); SSR 16-3p, 82 Fed. Reg. at 49463-64, 2017 WL 5180304, at *3. However, she further determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the administrative] decision." (Tr. at 19.) In particular, the ALJ found that Plaintiff "can do a broad range of light work because the record shows intact function despite a history of autoimmune hepatitis." (Tr. at 19.) The ALJ noted that in January 2020, treatment notes reflect that Plaintiff was "very

active" and "[o]bjective exam findings were good." (Tr. at 20.) The treatment notes reflect that Plaintiff "had an active lifestyle as a skater, and he planned to attend college." (Tr. at 20.) The ALJ acknowledged that, during a follow-up appointment on December 30, 2020, Plaintiff had "continued to gain weight," and that he "reported extreme fatigue and generalized arthralgias, consistent with his testimony regarding fatigue and aches." (Tr. at 21.) However, the ALJ further noted that Plaintiff "[could] do a broad range of light work despite this because objective exam findings were good. Joint range of motion was full. [Plaintiff's] gait was normal, and his extremities range of motion was 5/5 throughout. Cranial nerve functions were intact, sensation was normal, and [Plaintiff's] reflexes and gait were unremarkable." (Tr. at 21; 511-19.) Most significantly, Plaintiff reported to his provider "that he used roller blades every day and he got good physical activity," and the ALJ relied upon Plaintiff's continued activity level during the alleged disability period in finding him less limited than alleged. (Tr. at 21, 511.)

The ALJ further relied on a May 2021 consultation with a rheumatologist where Plaintiff reported that he skateboarded occasionally but spent most of his time gaming indoors. (Tr. at 500.) Rheumatology treatment notes reveal that Plaintiff "endorsed fatigue and global myalgias after exercise" as well as some diffuse joint pain, which Plaintiff's hepatologist thought was not related to his autoimmune hepatitis. (Tr. at 21, 500, 504.) As correctly recounted by the ALJ, the rheumatologist "stated that these symptoms appeared related to low vitamin D levels and deconditioning," and he recommended a graduated aerobic exercise program, a vitamin D supplement, and weight loss. (Tr. at 21, 504.) Examination findings were benign other than mild SI joint tenderness. (Tr. at 21, 503.)

11

Significantly, both State agency medical consultants opined that, despite his impairments, Plaintiff could perform light work, and the record contains no medical opinion evidence to the contrary.[4] Thus, two different medical doctors, Dr. Jeffrey Martin and Dr. Veronica Bedeau, reviewed Plaintiff's medical records, including his diagnosis of autoimmune hepatitis with obesity and reports of fatigue, but concluded that even with these impairments Plaintiff was capable of performing the demands of light work during an 8-hour workday with normal breaks. (Tr. at 21-22, 56-57, 74-76.) The ALJ specifically adopted the findings of Dr. Bedeau that Plaintiff could do light work with frequent climbing of ramps and stairs, avoiding concentrated exposure to extreme cold and heat and all exposure to fumes, areas of poor ventilation, and other pulmonary irritants. (Tr. at 22.) The ALJ found that Dr. Bedeau's opinion was persuasive because it was well supported with citations to the record and consistent with the evidence reflecting that Plaintiff could do light work.

Overall, in terms of Plaintiff's alleged fatigue, the ALJ found that, while Plaintiff's liver condition and obesity could be expected to produce this symptom, (1) Plaintiff continued to rollerblade and skateboard during the time period at issue, (2) his rheumatologist recommended that Plaintiff <u>increase</u> his level of aerobic exercise to combat his fatigue, weight gain, and body aches, and (3) the uncontested medical opinion evidence posited that Plaintiff remained capable of light work. These findings clearly support the RFC as written, and it is not the role of the Court to reweigh the evidence.

---

[4] Indeed, the ALJ noted that Plaintiff's examining provider in September 2019 stated in a record note that Plaintiff had mild systemic disease with <u>no functional limitations</u>, but the ALJ found that this was inconsistent with Plaintiff's report of severe fatigue, so the ALJ did not rely on this statement and instead, in light of Plaintiff's reports of severe fatigue, included functional limitations in the RFC. (Tr. at 20, 364.)

Similarly, Plaintiff testified that his obesity limits his ability to walk and causes general discomfort. (Tr. at 19.) However, as Defendant correctly notes, "[t]o the extent Plaintiff argues that his obesity could *potentially* cause additional exertional or other limitations, he points to no evidence that his obesity actually resulted in limitations during the relevant period." (Def.'s Br. [Doc. #14] at 14) ("Obesity in combination with another impairment(s) *may or may not* increase the severity or functional limitations of the other impairment(s). . . . We will not make general assumptions about the . . . functional effects of obesity combined with another impairment(s).") (emphasis added by Defendant) (quoting Social Security Ruling 19-2p: Titles II and XVI: Evaluating Cases Involving Obesity, SSR 19-2p, 84 Fed. Reg. 22924, 22924-25, 2019 WL 2161798, at *2, *4 (May 20, 2019))). Here, the evidence in the record, including the opinion evidence noted above, provide substantial evidence to support the ALJ's conclusion that Plaintiff was capable of light work.[5]

Finally, regarding Plaintiff's alleged memory and concentration difficulties, Plaintiff denied any difficulties with memory or concentration in his Adult Function Report, reporting that he could pay attention "a normal amount" (Tr. at 253), and he did not report any such difficulties to his providers. Plaintiff alleged no mental impairments in his applications, and the record contains no evidence of mental health treatment. Plaintiff nevertheless argues that his "ability to maintain attendance and on-task behavior are contested because he provided extensive testimony at the hearing regarding his fatigue and concentration limitations as a

---

[5] Moreover, the ALJ found at step five of the sequential analysis that, even if Plaintiff's impairments limited him to sedentary, unskilled work, he could still perform multiple jobs that exist in significant numbers in the national economy. (Tr. at 23-24.) Thus, to the extent Plaintiff contends that his obesity limited his ability to stand and walk for 8 hours in a workday, precluding light work, any alleged error would be harmless as substantial evidence clearly supports the ALJ's alternative finding that, despite Plaintiff's obesity, he remained capable of at least sedentary work.

13

result of his liver disease and obesity." (Pl.'s Br. at 16.) However, the ALJ expressly considered Plaintiff's testimony relating to these issues, as set out above, but found that Plaintiff remained capable of working with the limitations set out in the RFC. (See Tr. at 19.) Plaintiff presented no other evidence or contention regarding his ability to maintain attendance and stay on task. In fact, all other evidence, including opinion evidence, treatment records, and the Adult Function Report completed by Plaintiff himself, include no indication that Plaintiff would experience concentration difficulties that would require additional RFC limitations to account for them.

In sum, the ALJ's decision contains sufficient explanation to allow the Court to follow her reasoning, and there is substantial evidence to support the ALJ's conclusions.

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #10] is DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #16] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 25th day of September, 2023.

/s/ Joi Elizabeth Peake
United States Magistrate Judge